ORFINGER, J.
Grant Maloy, as Clerk of the Circuit Court of Seminole County ("the Clerk"), appeals the trial court's final judgment granting a writ of mandamus in favor of Seminole County, compelling the Clerk to invest county surplus funds as directed by the Seminole County Board of County Commissioners ("the Board"). This Court has jurisdiction. Fla. R. App. P. 9.030(b)(1)(A). We affirm.
Seminole County is a charter county and a political subdivision of the State of Florida. The Board is the governing body of the County. Art. VIII, § 1(e), Fla. Const.; § 125.01, Fla. Stat. (2017). The Clerk is a constitutional officer and serves as the ex officio clerk of the board of county commissioners, auditor, recorder, and custodian of all county funds as there is no special law or charter provision divesting the Clerk of these constitutional duties. Art. VIII, § 1(d), Fla. Const. From time to time, the County has surplus funds, which are funds not immediately required to meet its current expenses. See § 218.403(8), Fla. Stat. (2017). In his capacity as custodian of county funds, the Clerk is required to invest the county's surplus funds as provided in section 218.415, Florida Statutes. See § 28.33, Fla. Stat. (2017).
In 1995, pursuant to section 218.415, Florida Statutes (1995), the Board adopted an investment policy (the "1995 Investment *372 Policy"), which established a list of permissible investments and other guidelines relating to the nature and safety of such investments. In the 1995 Investment Policy, the Board delegated to the office of the clerk of the court, in its capacity as custodian of county funds, the implementation of the 1995 Investment Policy. For the next twenty-two years, the previous clerk of the court, without objection or interference from the Board, made discretionary investments of county surplus funds in accordance with the 1995 Investment Policy.
In March 2017, the Board adopted a resolution substantially revising the 1995 Investment Policy (the "2017 Investment Policy"). Among other things, the 2017 Investment Policy authorized the retention of an external investment advisor to make recommendations to the Board concerning the investment of surplus county funds. The 2017 Investment Policy directed the Clerk to implement the Board's investment decisions as soon as possible and to reallocate the investments of the county surplus funds as recommended to the Board by its investment advisor. When the Clerk refused to implement the Board's investment directives, the Board instituted these mandamus proceedings. Following extensive briefing and a hearing, the trial court issued a writ of mandamus, directing the Clerk to comply with the investment directions received periodically from the Board. This appeal followed.
"Mandamus is a common law remedy used to enforce an established legal right by compelling a person in an official capacity to perform an indisputable ministerial duty required by law." Poole v. City of Port Orange, 33 So.3d 739, 741 (Fla. 5th DCA 2010) (citing Puckett v. Gentry, 577 So.2d 965, 967 (Fla. 5th DCA 1991) ). "A duty or act is ministerial when there is no room for the exercise of discretion, and the performance being required is directed by law." Austin v. Crosby, 866 So.2d 742, 744 (Fla. 5th DCA 2004). The petitioner must show a clear legal right to the relief requested and "an indisputable legal duty on the part of the respondent" to act. Bennett v. Clerk of Circuit Court Citrus Cty., 150 So.3d 277, 278 (Fla. 5th DCA 2014) (citing Bernard v. State, 911 So.2d 1259, 1260 (Fla. 5th DCA 2005) ).
The issue in this case is whether the Clerk is subject to the direction of the County, acting through its Board, in the investment of county surplus funds. Because this presents a pure question of law, we review the trial court's ruling de novo. W. Fla. Reg'l Med. Ctr., Inc. v. See, 79 So.3d 1, 8 (Fla. 2012) ; Racetrac Petroleum, Inc. v. Delco Oil, Inc., 721 So.2d 376, 377 (Fla. 5th DCA 1998). In analyzing the issue, we are mindful that "[t]he cardinal rule of statutory construction is 'that a statute should be construed so as to ascertain and give effect to the intention of the Legislature as expressed in the statute.' " Gaulden v. State, 195 So.3d 1123, 1125 (Fla. 2016) (quoting City of Tampa v. Thatcher Glass Corp., 445 So.2d 578, 579 (Fla. 1984) ). When a statute is clear and unambiguous, a court must use the plain language of a statute and avoid rules of statutory construction to determine legislative intent. Schoeff v. R.J. Reynolds Tobacco Co., 232 So.3d 294, 301 (Fla. 2017). Only when statutory language is unclear or ambiguous, are statutory construction rules to be applied. Id. at 302.
A brief historical overview of the investment discretion of county surplus funds will be helpful in examining this issue. In 1943, the Florida Legislature enacted chapter 21691, section 1, Laws of Florida, which "authorized and empowered" boards of county commissioners "to invest and reinvest any surplus public funds in their control or possession." That authority, codified in *373 section 125.31(1), Florida Statutes, provided that "[u]nless otherwise authorized by law or by ordinance, the board of county commissioners shall, by resolution to be adopted from time to time, invest and reinvest any surplus public funds in its control or possession ...." For the next thirty years, the boards of county commissioners had sole authority to invest a county's surplus funds. Then, in 1973, the Legislature enacted section 28.33, Florida Statutes (1973), which also gave the clerk of the court statutory authority to invest a county's surplus funds, providing, in relevant part:
The clerk of the circuit court in each county shall make an estimate of his projected financial needs for the county and shall invest any funds in designated depository banks in interest-bearing certificates or in any direct obligations of the United States in compliance with federal laws relating to receipt of and withdrawal of deposits.
See ch. 73-282, § 1, Laws of Fla.
Due to the apparent conflict between these two statutes, the supreme court was called on to interpret the interplay between sections 28.33 and 125.31(1) to determine whether the board of county commissioners or the clerk of the circuit court controlled the investment of county surplus funds. In Alachua County v. Powers, 351 So.2d 32 (Fla. 1977), the court held that pursuant to section 28.33, the clerk of circuit court had investment discretion of county surplus funds except for the investment of those surplus funds directed by resolution of the board of county commissioners under section 125.31 :
[T]here appears to be no conflict with the holding of the court below that the board may by appropriate resolution designate the investment place of surplus funds and the clerk is required to carry out the board's directive. In the alternative, where the board does not so designate the investment of surplus funds, these funds are to be invested by the clerk pursuant to Section 28.33, Florida Statutes (1975).
Powers, 351 So.2d at 39. In other words, the supreme court determined that if a county adopted an investment policy, that policy controlled.
Thereafter, in 1977, the Legislature created the "Investment of Local Government Surplus Funds Act" (the "Act"), sections 218.40-.422, Florida Statutes, "to promote, through state assistance, the maximization of net interest earnings on invested surplus funds of local units of government, thereby reducing the need for imposing additional taxes." § 218.401, Fla. Stat. (1977). In 1995, the Act was amended to redefine the term "units of local government" to include clerks of court in addition to counties, which were already included. The Act gave units of local government the option to either adopt a written investment policy for their surplus funds or to default to statutory limitations on the types of investments. §§ 218.403, 218.415, Fla. Stat. (1995). The amendment required that any investment activity by a unit of local government be consistent with a written investment plan for surplus funds adopted by the governing body or principal officer of the governmental unit. § 218.415, Fla. Stat. (1995). At the same time, section 125.31, authorizing boards of county commissioners to invest surplus funds, was also amended to provide that "[t]he provisions of this section are subject to the provisions of s. 218.415." § 125.31(7), Fla. Stat. (1995).
In 2000, the Legislature substantially revised the Act in order to provide uniform guidelines in investing the surplus funds of all local government agencies. See ch. 2000-264, Laws of Fla. As part of the revision, the Legislature repealed section 125.31. However, the language of *374 section 125.31(1) was substantially incorporated into section 218.415(16), Florida Statutes, and continued to allow units of local government, such as the County, to adopt written investment policies.[2] Compare § 218.415(16), Fla. Stat. (2000) (stating that "[t]hose units of local government electing to adopt a written investment policy ... may by resolution invest and reinvest any surplus public funds in their control or possession" in any of several listed types of funds and securities), with § 125.31(1), Fla. Stat. (1999) ("Unless otherwise authorized by law or by ordinance, the board of county commissioners shall, by resolution to be adopted from time to time, invest and reinvest any surplus public funds in its control or possession ...."). Thus, the authority of "units of local governments," including counties, to direct the investments of surplus funds in their control or possession by resolution was not repealed. With this overview in mind, we now address the issue presented in this case.
The Clerk is "custodian" of all surplus funds of the County. Art. VIII, § 1(d), Fla. Const. Because neither the Constitution nor statutes define the term "custodian," we consult the dictionary, which informs us that a "custodian" is a "person or institution that has charge or custody (of a child, property, papers, or other valuables)." Custodian, Black's Law Dictionary (10th ed. 2014); see also Custodian, Merriam-Webster's Collegiate Dictionary (11th ed. 2014) (defining "custodian" as "one that guards and protects or maintains"). However, the Clerk's role as "custodian" of county surplus funds is not self-implementing and must be established by statute. Article VIII, section (1)(b), Florida Constitution, provides that "[t]he care, custody and method of disbursing county funds shall be provided by general law" while Article II, section 5(c), Florida Constitution states that "[t]he powers [and] duties ... of state and county officers shall be fixed by law." Thus, we examine the relevant statutes to determine what investment discretion the Clerk has when acting as custodian of county surplus funds.
Section 28.33, Florida Statutes (2017), provides that "[t]he clerk of the circuit court in each county shall invest county funds in excess of those required to meet expenses as provided in s. 218.415." "Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement." Jennings v. Rodriguez, --- U.S. ----, 138 S.Ct. 830, 844, 200 L.Ed.2d 122 (2018) (quoting Kingdomware Techs., Inc. v. United States, --- U.S. ----, 136 S.Ct. 1969, 1977, 195 L.Ed.2d 334 (2016) ). The Clerk is thus mandated to invest surplus funds as provided in section 218.415. That section, entitled "Local government investment policies," applies to all local government investment policies, including the Clerk and the County, and provides in relevant part:
Investment activity by a unit of local government must be consistent with a written investment plan adopted by the governing body , or in the absence of the existence of a governing body, the respective principal officer of the unit of local government and maintained by the unit of local government or, in the alternative, such activity must be conducted in accordance with subsection (17). Any such unit of local government shall have an investment policy for any public funds in excess of the amounts needed to meet current expenses as provided in subsections (1)-(16) , or shall meet the *375 alternative investment guidelines contained in subsection (17). Such policies shall be structured to place the highest priority on the safety of principal and liquidity of funds. The optimization of investment returns shall be secondary to the requirements for safety and liquidity. Each unit of local government shall adopt policies that are commensurate with the nature and size of the public funds within its custody.
§ 218.415, Fla. Stat. (2017) (emphasis added). Hence, section 218.415 informs us that surplus funds investments are to be consistent with the written investment plan adopted by the governing body of the unit of local government. Governing body is defined as "the body or board in which the legislative power of a unit of local government is vested." § 218.403(6), Fla. Stat. (2017). In this case, that is the Board. Reading these statutes together, it is clear to us that the Board, as the County's governing body, has the authority to adopt an investment policy for county surplus funds that must be implemented by the Clerk. The Clerk is not the "unit of local government" authorized to have an investment policy for county surplus funds. Instead, the Clerk may only adopt an investment policy for the surplus funds of his own office.[3]
The Board's decision to adopt the 2017 Investment Policy, directing the Clerk to implement its investment decisions from time to time, did not transfer the statutory duties of the Clerk to the Board. Under the 2017 Investment Policy, the Clerk continues to be the custodian of the County's funds, as provided under the Florida Constitution, and continues to "invest" those funds as provided in sections 218.415 and 28.33.
The trial court did not err in issuing the writ of mandamus. The investment decisions of county surplus funds do not reside with the counties in every instance. Rather, the clerk of circuit court has discretion in the investment of county surplus funds except for those surplus funds covered by a county's investment policy. In this case, the Board has directed the investment of the County's surplus funds, and the Clerk must comply with that direction.[4]
AFFIRMED.
COHEN and EDWARDS, JJ., concur.

The Historical and Statutory Notes for section 125.31 reads "Repealed § 125.31, which related to the investment of surplus public funds, was derived from: Similar subject matter added at § 218.415 by Laws 2000, c. 264, § 3, eff. Oct. 1, 2000."

Section 219.075(1)(a), Florida Statutes (2017), requires that all county officers "having, receiving, or collecting any money, either for his or her office or on behalf of and subject to subsequent distribution to another officer of state or local government, while such money is in excess of that required to meet current expenses or is pending distribution, shall invest such money, without limitation, as provided in s. 218.415." Thus, the Clerk is authorized to invest his own surplus funds under his control. Cf. § 219.075(1)(c), Fla. Stat. (2017) (expressly excluding funds held as part of clerk's county-related functions).

The Clerk did not appeal the trial court's order directing him to pay the investment advisor's fee.